IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| JOSE DE LA CRUZ,                    )<br>                                                      )<br>         Plaintiff,                         )<br>    v.                                              )<br>                                                      )<br>VIRGIN ISLANDS WATER AND   )<br>POWER AUTHORITY,             )<br>                                                      )<br>         Defendant.                      )<br>_____)<br>                                                      )<br>                                                      )<br>VIRGIN ISLANDS WATER AND   )<br>POWER AUTHORITY,             )<br>                                                      )<br>         Third Party Plaintiff,       )<br>                                                      )<br>    v.                                              )<br>                                                      )<br>MARCO BLACKMAN,               )<br>                                                      )<br>         Third Party Defendant.   )<br>_____) | CIV. NO.: 07-CV-09<br><br>**Action for Damages** |

## **MEMORANDUM OPINION**

Finch, Senior Judge

    THIS MATTER is before the Court on Virgin Islands Water and Power Authority's ("WAPA" or "Defendant") Motion to Dismiss. WAPA asserts that the Court lacks subject matter jurisdiction because the parties are not diverse and the Plaintiff cannot demonstrate that the amount in controversy exceeds the sum of $75,000.00. WAPA also asks the Court to dismiss the action because Plaintiff Jose De La Cruz has allegedly failed to comply with the requirements of the Virgin Islands Tort Claims Act ("VITCA"). Plaintiff Jose De La Cruz ("De La Cruz" or "Plaintiff") opposes the Defendant's Motion arguing that (1) Plaintiff was a citizen

of the Dominican Republic at the time the lawsuit was filed; (2) the VITCA does not apply to WAPA; (3) judicial estoppels bars WAPA's inconsistent defenses; and (4) if the Court deems the VITCA applicable, then the Plaintiff should be permitted to file a notice of tort claim out of time. For the reasons discussed below, the Defendant's Motion to Dismiss is DENIED.

I.   Background

On December 4, 2006, Plaintiff asserts that he received an electrical shock injury when the paint roller he was using to paint a building in Mutual Homes Building 17 made contact with WAPA's electrical line. Plaintiff alleges that the electrical line was not marked as an electrical line and that there were no warnings that the electrical line was carrying high voltage electrical current. On January 22, 2007, Plaintiff instituted this action against WAPA. Plaintiff asserts that at the time he brought this claim, he was a citizen of the Dominican Republic but resided in the Virgin Islands pursuant to his work visa.[1] Plaintiff states that he became a permanent resident alien on March 30, 2007.

II.  Discussion

   A.  Diversity Jurisdiction

      1.  Diversity of Citizenship

Defendant argues that Plaintiff's admission to the United States on a K-3 visa on March 30, 2005 and application for permanent resident status was the equivalent of admission into the

---

[1] The pleadings show that Plaintiff entered the United States on a K-3 visa on March 30, 2005. A K-3 visa is issued to the spouse of a U.S. citizen.

United States for permanent residence, and Plaintiff should therefore be deemed a citizen of the Virgin Islands because that is where he was domiciled at the time he filed this lawsuit.[2]

District courts have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a State and citizens or subjects of a foreign state. 28 U.S.C. § 1332(a)(2). The statute also provides that "an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled." *Id*. The court assesses diversity of citizenship at the time the action is filed. *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991).

In interpreting the "permanent residence" provision of 1332(a), courts have logically turned to a definition of the comparable phrase "lawfully admitted for permanent residence" provided in United States immigration laws. In that context, "lawfully admitted for permanent residence" is defined as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws." *Foy v. Schantz, Schatzman & Aaronson, P.A.*, 108 F.3d 1347, 1349 (11th Cir. 1997) (citing 8 U.S.C. § 1101(a)(20)). Accordingly, the "permanent residence" provision of 1332(a) is held to refer "to an alien litigant's official immigration status." *Foy*, 108 F.3d at 1349 (holding that "the permanent resident alien provision of § 1332(a) applies only to aliens who have received

---

[2] Defendant relies on *Frett-Smith v. Vanterpool*, 511 F.3d 396, 401 (3d Cir. 2008) for the proposition that Plaintiff's citizenship and domicile can be determined pursuant to the same test applied to U.S. citizens. Under the test set forth in *Vanterpool* and other cases domicile is established by a "party's physical presence in a state with an intent to remain there indefinitely." *Id*. (citing *Juvelis v. Snider*, 68 F.3d 648, 654 (3d Cir.1995)). However, in *Vanterpool*, the court applied this test to determine whether a plaintiff with dual-citizenship in the United States and the British Virgin Islands was domiciled in Florida. *Id*. at 399-400 (holding that "for purposes of diversity jurisdiction, only the American nationality of a dual national is recognized" and thus "diversity jurisdiction may be properly invoked only when a dual citizen's domicile, and thus his citizenship, is in a state diverse from that of adverse parties"). At the time this lawsuit was initiated, the Plaintiff was not a dual-citizen of the United States and another country, and thus *Vanterpool* is not dispositive of whether the test for domicile articulated in that case is applicable here.

permission from the INS to remain permanently in this country).  Under this analysis, an alien residing in the United States pursuant to a nonimmigrant visa is not deemed a citizen for purposes of diversity jurisdiction.  *See, e.g., Funygin v. Yukos Oil Co.*, 2005 WL 1840147, at *1 (S.D. Tex. 2005) ("aliens who have been accorded lawful permanent resident status under the immigration laws are considered aliens "admitted for permanent residence," while aliens admitted to the United States on temporary nonimmigrant visas are not") (citing *Kato v. County of Westchester*, 927 F. Supp. 714, 715-16 (S.D.N.Y. 1996)); *see also Miller v. Thermarite Pty. LTD.*, 793 F. Supp. 306, 308-09 (S.D. Alabama 1992) (alien's connections with the state and intent to remain for an indefinite period are insufficient to render him a citizen of the state for diversity purposes when the alien was not a permanent resident); *Kristensen v. Dampierre*, 1990 WL 103957, at *2 (S.D.N.Y. July 19, 1990) (alien admitted pursuant to a nonimmigrant temporary work visa was not admitted to country for permanent residence and thus was an alien for purposes of diversity jurisdiction).  The fact that the alien has applied for permanent resident status does not affect this analysis.  *Chan v. Mui*, 1993 WL 427114, at *1 (S.D.N.Y. Oct. 20, 1993) ("permanent residence" did not encompass an alien who was a resident of Oklahoma and had applied for permanent resident status).

The Court therefore concludes that given Plaintiff's status as a nonresident alien at the time that he filed the instant lawsuit, diversity between the parties is satisfied.

### 2.  Jurisdictional Amount

Defendant also argues that the jurisdictional amount has not been met.  Defendant, relying on Superior Court Case, *Cyprian v. Butcher and Virgin Islands Water and Power Authority*, Civ. No. SX-08-CV-515 (Aug. 19, 2009), argues that WAPA, as an

instrumentality of the Government of the Virgin Islands, is clothed in sovereign immunity and may only be liable in tort pursuant to the waiver of immunity in the Virgin Islands Tort Claims Act. Pursuant to the Tort claims Act, as codified in 33 V.I.C. § 3411(c), the liability of the Government cannot exceed $25,000.00. Thus, Defendant argues, the jurisdictional amount required for diversity jurisdiction cannot be met. However, as Plaintiff points out and Defendant concedes, the Superior Court case *Petersen v. WAPA*, Civ. No. ST-08-CV-577 (Oct. 19, 2009) directly contradicts the holding of *Cyprian*. In *Petersen*, the court held that WAPA was not an arm of the Government of the Virgin Islands, and thus did not enjoy the privilege of sovereign immunity. Consequently, in *Petersen*, the court found that the plaintiff's failure to comply with the VITCA did not deprive the court of subject matter jurisdiction. Given the split of authority among the judges of the Superior Court, and recognizing that cases from the Virgin Islands Superior Court constitute persuasive but non-binding law, the Court will undertake its own analysis with regard to the applicability of the VITCA to WAPA.

### a. Applicability of the VITCA

The Revised Organic Act grants sovereign immunity to the Virgin Islands government for tort claims, providing "that no tort action shall be brought against the Government of the Virgin Islands or against any officer or employee thereof in his official capacity without the consent of the legislature." *Commissioner of Dept. of Planning and Natural Resources v. Century Alumina Co., LLC*, 2010 WL 56071, at *1 (D.V. I. Jan. 5, 2010) (citing 48 U.S.C. § 1541(b)). The Virgin Islands government has waived this immunity for certain torts as provided in the Virgin Islands Tort Claim Act. *See* 33 V.I.C. § 3401 et seq. Specifically, the

Government's immunity is waived "with respect to injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of an employee of the Government of the United States Virgin Islands while acting within the scope of his office or employment." *Century Alumina Co., LLC*, 2010 WL 56071, at *1 (citing 33 V.I .C. § 3408(a)). The "Government of the Virgin Islands" is defined in § 3401 of Title 33 as follows:

> "Government of the Virgin Islands" includes the executive, legislative, and judicial branches of the Government of the Virgin Islands, agencies and instrumentalities of the Government of the Virgin Islands, and Governing Boards and Commissions of the Government of the Virgin Islands, including but not limited to the Virgin Islands Government Hospitals and Health Facilities Corporation, but does not include any contractor with the Government of the Virgin Islands.[3]

33 V.I.C. § 3401.

Central to the issue before the Court is whether WAPA, pursuant to its status as an independent instrumentality, is included in the definition of the "Government of the Virgin Islands" under the terms of § 3401. Defendant, relying on *Cyprian v. Butcher and Virgin Islands Water and Power Authority*, asserts that it is. However, the language of section 3401 cannot be read in a vacuum. The fact that § 3401 extends Tort Claim Act protection to governmental "instrumentalities" of the Virgin Islands does not preclude the possibility that WAPA, by virtue of its status as an "independent instrumentality" was not cloaked with sovereign immunity. In fact, a review of the relevant statutory enactments and case law establishes that WAPA is *not* immune to lawsuit.

---

[3] Section 3401 was amended on May 14, 1999.

WAPA was established in 1964 as "a public corporation and autonomous governmental instrumentality of the Government of the United States Virgin Islands." 30 V.I.C. § 103(a). Moreover, WAPA was established as "a corporation having legal existence and personality *separate and apart* from the Government." 30 V.I.C. § 103(b) (emphasis added). Thus, "[s]ubject to section 112(a) of this title, the debts, obligations, contracts, bonds, notes, debentures, receipts, expenditures, accounts, funds, facilities, and property of the Authority shall be deemed to be those of said Authority and not to be those of the Government of the United States Virgin Islands, or any office, bureau, department, agency, commission, municipality, branch, agent, officer or employee thereof." *Id*. Included among WAPA's powers, as set forth in § 105(4) of Title 30, was the power "*to sue and be sued in its corporate name*" (emphasis added.) Moreover, pursuant to § 121, "no officer, board, commission, department or other agency or political subdivision of the Untied States Virgin Islands" has jurisdiction over WAPA in the management of its assets. 30 V.I.C. § 121. However, WAPA's general exemption from laws applicable to other governmental entities was restrained in part by the enactment of 30 V.I.C. § 122, which provides

> Nothing in this chapter shall be construed as exempting the Virgin Islands Water and Power Authority from any law made specifically applicable thereto or generally applicable to independent instrumentalities of the Government of the United States Virgin Islands, whether such law was enacted before, on, or after February 14, 1980.

30 V.I.C. § 122.

The language contained in parts of the WAPA enabling statute cited above (§§ 103 and 105), has been interpreted with respect to other instrumentalities and agencies of the Virgin Islands as precluding sovereign immunity. *See Cintron v. V.I. Port Authority*, 18 V.I. 105, 106 (Terr. Ct. Nov. 19, 1981) (the TCA was inapplicable to VIPA because it was not made specifically

applicable to VIPA and was inapplicable to independent instrumentalities of the Government)[4];
*Rosa v. V.I. Housing Authority*, 43 V.I. 131, 136 (Terr. Ct. 2001) ("by creating VIHA as a public body corporate and politic, and decisively conferring it with the power to sue and be sued, the government was clearly and unequivocally waiving sovereign immunity with respect to VIHA in its capacity as a 'separate entity' from the government"). This reading of the statute is also supported by the Third Circuit, which has noted that the clause "to sue and be sued" when applied to a governmental entity "must be liberally construed" such that it encompasses "the natural and appropriate incidents of legal proceedings." *Penn. Dep't of Envtl. Resources v. United States Postal Serv.*, 13 F.3d 62, 65 (3d Cir. 1993) (citing *Fed. Housing Admin. v. Burr*, 309 U.S. 242, 245 (1940*)). See also Loeffler v. Frank*, 486 U.S. 549, 554 (1988) ("Congress . . . has waived the sovereign immunity of certain federal entities from the times of their inception by including in the enabling legislation provisions that they may sue and be sued"). Implied exceptions to this waiver of immunity cannot be assumed absent a showing that

> certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of the governmental function, or that for other reasons it was plainly the purpose of Congress to use the 'sue-and-be-sued' clause in a narrow sense.

*Penn Dept Envtl. Resources,* 13 F.3d at 65 (citing *Burr*, 309 U.S. at 245).

---

[4] The court in *Cintron* cited language in the enabling statute of VIPA that is identical to the relevant language in WAPA's enabling statute. Pursuant to 29 V.I.C. § 541(e), VIPA is deemed "a corporation having legal existence and personality separate and apart from the Government and the officers controlling it." *Id*. at 105-06 (citing 29 VIC 541(e)). As such, it has "the ability to sue and be sued in its corporate name." *Id*. at 106 (citing 29 V.I.C. § 543(4)). Similar to § 122 of Title 30, § 578 of Title 29 provides that "[n]othing in this chapter shall be construed as exempting the Virgin Islands Port Authority from any law made specifically applicable thereto or generally applicable to independent instrumentalities of the Government of the United States Virgin Islands, whether such law was enacted before, on, or after February 14, 1980." *Id*. (citing 29 V.I.C. § 578)). The *Cintron* court concluded that "[t]o hold that the Tort Claims Act applies to the Port Authority would defeat the plain meaning of the language of 541(e) and § 543(4). There is no evidence that the Legislature contemplated such a change, and absent a clear intention to the contrary, none will be read into it." *Id*.

Defendant argues that the enactment of section 122 "served to subject WAPA to laws applicable to instrumentalities, such as the VITCA." Furthermore, contesting the finding in *Cintron* that the VITCA is inapplicable to independent instrumentalities, the Defendant also argues that the 1999 amendment to section 3401 of VITCA "served to clarify the Legislature's intent to make all instrumentalities subject to the protections of the Act." (Def. Reply 9, 11.) This Court disagrees.

First of all, as the Virgin Islands Supreme Court has determined, § 122 only subjects WAPA to laws made specifically applicable to WAPA or generally applicable to *independent* instrumentalities. *V.I. Public Services Commission v. V.I. Water and Power Authority*, 49 V.I. 478, 488, 2008 V.I. Supreme LEXIS 15, at *18 (VI. 2008) (the language of § 122 "subjects WAPA only to laws that are specific to WAPA and those that apply generally to independent instrumentalities").[5] Second, keeping in mind that the *PSC* case was decided after the 1999 amendment of § 3401, the Court cannot discern any language in the 1999 amendment that shows the Legislature's intent to make all instrumentalities subject to the VITCA. Prior to the 1999 Amendment, § 3401 read:

---

[5] Defendant argues that the decision in *PSC v WAPA* turned upon the fact that the PSC lacked power to regulate governmental instrumentalities and not on the status of WAPA as an independent instrumentality. (Def. Reply 7.) However, in *PSC*, the court specifically stated that:

> [I]t is clear that PSC's chapter 1 powers do not apply generally to *independent instrumentalities of the government* because they do not apply, for example, to the Virgin Islands Port Authority ("VIPA"), the Virgin Islands Housing Finance Authority, or the Public Finance Authority—all of which are independent instrumentalities for purposes of section 122. Therefore, section 122 is not a pathway to subject WAPA to PSC's chapter 1 powers because section 122 removed WAPA's exemption from jurisdiction only with respect to laws specific to WAPA or generally applicable to independent instrumentalities.

*PSC*, 49 V.I. at 489. The emphasis on "independent instrumentalities" exists in the original opinion. Thus, it seems clear that, notwithstanding the limitations of PSC's enabling legislation, this language was dispositive in the court's ruling. This apparently was also WAPA's position in that case, as shown by the court's statement that "WAPA . . . contends that the Legislature intended to extend to WAPA . . . laws made generally applicable to independent instrumentalities like WAPA, as well as those made specifically applicable to WAPA." *Id*. at 487.

> "Department" includes the executive, legislative, and judicial branches of the government of the United States Virgin Islands, agencies and instrumentalities of the Government of the United States Virgin Islands, and Governing Boards and Commissions of the Government of the United States Virgin Islands, including but not limited to the government Hospital Facilities Boards, but does not include any contractor with the Government of the United States Virgin Islands.

33 V.I.C. § 3401 (1986).

The relevant language of § 3401 prior to 1999 is identical to the 1999 statute with the exception that the word "Department" was replaced with the phrase "Government of the Virgin Islands," the phrase "government of the United States Virgin Islands" was replaced with the phrase "Government of the Virgin Islands, and the "government Hospital Facilities Boards" was replaced with the phrase "Virgin Islands Government Hospitals and Health Facilities Corporation."[6] There is no clarification with respect to "instrumentalities."

There is also no evidence that subjecting WAPA to civil lawsuits such as the one asserted here would be inconsistent with any section of Title 30, or that § 122 constitutes an implied exception of the power of WAPA "to sue and be sued." *Penn Dept Envt'l Resources,* 13 F.3d at 65.[7] In fact, principles of statutory construction counsel against such a reading. As the Virgin

---

[6] For convenience, the 1999 amendment of § 3401 is repeated here:

> "Government of the Virgin Islands" includes the executive, legislative, and judicial branches of the Government of the Virgin Islands, agencies and instrumentalities of the Government of the Virgin Islands, and Governing Boards and Commissions of the Government of the Virgin Islands, including but not limited to the Virgin Islands Government Hospitals and Health Facilities Corporation, but does not include any contractor with the Government of the Virgin Islands."

[7] The Court rejects Defendant's theory that the § 122 operates to limit the scope of the "sue and be sued" waiver. (Def. Reply 15-16.) Defendant argues that § 122 is analogous to a federal statute which provides that the federal tort claim act applies even to entities which the government has granted the authority to sue and be sued. Specifically, 28 U.S.C. § 2679(a) provides that "[t]he authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive." Sections 3401 and 122 could accomplish the same result as § 2679 of title 28 if the language of § 3401 specifically applied to WAPA or independent instrumentalities. Defendant cannot escape the problem of immunity without looking at the statutory scheme of the Virgin Islands. Reference to federal law in this instance is unavailing.

Islands Supreme Court pointed out in *PSC v. WAPA*, "repeal by implication is generally disfavored and should occur only when 'the later statute expressly contradicts the original act' or when 'such construction is absolutely necessary in order that the words of the later statute shall have any meaning at all.'" *PSC*, 49 V.I. at 486 (quoting *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662-63 (2007)).

A brief history of the relevant statutes pertaining to WAPA and the VITCA provides support for the amenability of WAPA to suit. As enacted in 1964, WAPA was empowered as an autonomous governmental instrumentality to "sue and be sued." 30 V.I.C. § 105(4). The VITCA, enacted in 1971, constituted a waiver of governmental immunity for the Government of the Virgin Islands pursuant to 30 VIC § 3408 and under § 3401, the "Government of the Virgin Islands" includes "instrumentalities of the Government of the Virgin Islands." Enacted, in 1980, section 122 of Title 33 states that WAPA is not exempted from any law that is "made specifically applicable [to WAPA] or generally applicable to independent instrumentalities of the Government of the United States Virgin Islands."[8] Neither § 3401 nor § 122 expressly contradicts the earlier enacted statute, 105(4), which allows WAPA to sue and be sued. The most harmonious reading, which gives full effect to the statutory schemes embodied in Titles 30 and 33 of the Virgin Islands Code, is that WAPA is not immune from suit pursuant to 30 V.I.C. 105(4), and that WAPA is not shielded from immunity by 33 V.I.C. § 3401 because § 3401 does

---

[8] The Legislative record indicates that 30 V.I.C. § 122, and similar provisions governing other governmental instrumentalities, was enacted in order "To Provide That No Independent Instrumentality of the Government of the Virgin Islands Shall be Exempt From Laws Made Specifically Applicable Thereto." No. 4407 § 2(a), Sess. L. 1980, p. 12. As the Virgin Islands Supreme Court has pointed out, the timing of the amendment of § 122 in 1980 suggests that the amendment was a direct response to the District Court holding that the Sunshine Act did not apply to WAPA. *PSC*, 49 V.I. at 487-88. The Sunshine Act, codified at 1 V.I.C. § 251-56 required that most meetings of government agencies be open to the public. *Id.* at 487. Section 253(a)(5) of the Sunshine Act specifically provided that "the Board of Directors of the Virgin Islands Water and Power Authority" was included within the meaning of "Governmental agency" or "agency" to which the Sunshine Act applied. 1 V.I.C. 253(a)(5). The purpose cited by the Legislature and the timing of the 1980 amendment of § 122 show that the Legislature was primarily focused on making WAPA subject to laws that were *explicitly* applicable to it.

not apply specifically to WAPA or to independent instrumentalities of the Government of the Virgin Islands. This reading gives effect to 105(4) without depriving § 122 or § 3401 of meaning.

For all the reasons cited above, the Court finds that the VITCA is inapplicable to WAPA.

### III. Conclusion

The Court concludes that the matter is properly before the court pursuant to diversity jurisdiction. There was complete diversity between the parties because Plaintiff was a nonresident alien at the time that he filed the instant lawsuit. Moreover, Plaintiff has alleged a proper jurisdictional amount, as compliance with the VITCA is not required in this matter. A separate Order will issue stating the same.

**ENTER**:

Dated: April 12, 2010             _____/s/_____
HONORABLE RAYMOND L. FINCH
SENIOR U.S. DISTRICT JUDGE